UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| W. ALLEN McDONALD, on behalf of himself and all others similarly situated, )<br>)<br>)<br>)<br>PLAINTIFF, )<br>)<br>v. ) NO. _____<br>)<br>HARTFORD LIFE AND ANNUITY )<br>INSURANCE COMPANY, a Connecticut )<br>Corporation, ) JURY DEMAND<br>)<br>DEFENDANT. ) | |

**CLASS ACTION COMPLAINT FOR DECLARATORY
RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**

**NOW INTO COURT** comes the Plaintiff, W. Allen McDonald (""Plaintiff" or "McDonald"), on behalf of himself and all others similarly situated (the "Class," as defined below), and pursuant to Rule 23 of the Federal Rules of Civil Procedure, brings this Complaint against the Defendant, Hartford Life and Annuity Insurance Company ("The Hartford"), for declaratory judgment, injunctive relief, breach of contract, and unfair or deceptive trade practices.

This Complaint is based upon personal knowledge as to the facts pertaining to the Plaintiff and upon information and belief as to all other matters, based on the investigation of counsel.

## I. NATURE OF ACTION

1. Plaintiff brings this proposed class action against The Hartford on behalf of himself and other similarly situated owners of variable life insurance ("VUL") policies issued by The Hartford, who, since at least March 2011, were charged excessive "Premium Processing Charges" (the "Class"). Plaintiff seeks declaratory relief, injunctive relief, and monetary damages, arising from The Hartford's breach of contracts and unfair or deceptive trade practices.

2. Since at least March 2011, The Hartford has uniformly and consistently over-charged Plaintiff and other Class members for processing premium payments. Although the amount of the Premium Processing Charges is expressly capped at an unambiguous rate and/or amount in the insurance contract, The Hartford has routinely collected Premium Processing Charges exceeding the rate and/or amount contractually agreed upon by The Hartford and its policyholders.

3. The Hartford has failed to credit or otherwise reimburse the Plaintiff and other Class members for any of the Premium Processing Charges overcharges.

4. As a result, Plaintiff and other Class members have been injured in their property and are justly entitled to damages and equitable relief.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., which vests

original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 potential Class members across the United States, the aggregate amount in controversy exceeds $5 million, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state other than Tennessee.

6. This Court has personal jurisdiction over The Hartford because it conducts substantial business within the State of Tennessee.  As such, it has significant, continuous, and pervasive contacts in Tennessee.

7. Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c), because during the Class Period, The Hartford transacted business, was found, or had agents in this district and because a substantial portion of the affected trade and commerce described below has been carried out in this district.

### III.  PARTIES

8. Plaintiff, W. Allen McDonald, is citizen and resident of Tennessee.

9. Hartford Life and Annuity Insurance Company ("The Hartford") is an insurance company organized and existing under the laws of the State of

Connecticut with its principal place of business at 200 Hopmeadow Street, Simsbury, Connecticut 06070. The Hartford is duly authorized to do business in the State of Tennessee.

10. From its Connecticut office, Hartford Life and Annuity Insurance Company provides annuity, life insurance, and reinsurance products. The company was formerly known as ITT Hartford Life and Annuity Insurance Company and changed its name to Hartford Life and Annuity Insurance Company in July 1997. The company was incorporated in 1956 and is based in Simsbury, Connecticut. The Hartford is a wholly-owned subsidiary of Hartford Life Insurance Company and operates as a subsidiary of The Hartford Financial Services Group, Inc. The Hartford Financial Services Group, Inc. is a Fortune 500 holding company for insurance and financial services subsidiaries that provide property and casualty insurance, group life and disability products, and mutual funds and exchange-traded products to individual and business customers in the United States. Founded in 1810, The Hartford Financial Services Group, Inc. now has approximately 17,500 employees and is one of the nation's largest insurance and financial services companies. The Hartford Financial Services Group, Inc. lists assets as of December 2015 of over $40 Billion.

11. In 2013, The Hartford Financial Services Group, Inc. sold its life insurance business to Prudential. Through a reinsurance transaction, Prudential Financial, Inc. acquired the individual life insurance business of The Hartford

Financial Services Group, Inc., effective January 2, 2013, providing The Hartford Financial Services Group, Inc. with an insurance policy covering The Hartford's existing life insurance policies and obligations. While The Hartford remains the issuing company for life insurance products, the policies are now administered by Prudential Insurance Company of America. All of the benefits, terms and provisions of such policies remain unchanged.

## IV. AGENTS AND CO-CONSPIRATORS

12. The acts of The Hartford alleged in this Complaint were authorized, ordered, or done by its officers, agents, employees, or representatives, while actively engaged in the management and operation of The Hartford's business.

13. Various persons or firms not named herein as defendants have participated as co-conspirators in the actions alleged herein and have performed acts and made statements in furtherance thereof.

## V. FACTUAL BACKGROUND

14. In the 1990's, ITT Hartford Life developed a variable universal life ("VUL") policy for survivorship life insurance, which covers two lives and pays on the second death. The policy has two death benefit guarantees, each based on the level of premium paid. One guarantees a level premium for the joint life expectancy. The other guarantee is available for a lower premium.

15. Universal life insurance policies, both variable and non-variable, include charges such as premium based loads, cost of insurance, administrative

-5-

and issue charges and surrender charges. These charges are different for each product and some may vary by age, gender, face amount, underwriting class, premiums and policy durations. These charges have a significant impact on policy account values.

16. On March 3, 1999, Plaintiff submitted a completed and executed written application to The Hartford for a $200,000 VUL last survivor policy insuring the lives of his parents, William T. McDonald and Mary L. McDonald, along with an initial premium payment of $1000 (the balance of the premium would not be due until delivery of the policy). Like all other applications for such policies, the application and payment were submitted to The Hartford's office in Connecticut for approval.

17. On March 18, 1999, medical questionnaires were properly completed and executed by Plaintiff's parents and a licensed nurse. Those medical questionnaires were also submitted to The Hartford's office in Connecticut as part of the application for insurance.

18. On May 27, 1999, The Hartford issued a Last Survivor Flexible Premium Variable Universal Life Insurance Policy, No. VL9231387, to the Plaintiff. The policy was executed by The Hartford Secretary, Mr. Richard G. Costello, and

The Hartford President, Mr. Thomas M. Marra, to insure the lives of Plaintiff's parents, William T. McDonald and Mary L. McDonald.[1] A copy of the policy is attached hereto as ***Exhibit 1***.

19. The face amount of that policy is $200,000. The current cash value of the policy is approximately $90,000. The annual premium for the policy is $4,000. Plaintiff has paid all premiums and met all of his obligations concerning the policy.

20. Any premium funds left over after costs of insurance, premium policy charges, and other administrative costs are invested in the stock market.

21. Consistent with the policy type, the policy pays out on the occasion of the last surviving parent's death. Plaintiff's father, Mr. William T. McDonald, passed away in 2005. Accordingly, the policy technically only insures Plaintiff's mother at this time.

22. Upon information and belief, most insurance companies, including Prudential, routinely charge fees of approximately $2.00 for processing premium payments. For instance, as recently as 2010, ReliaStar Life Insurance Company issued VUL policies distributed by ING America Equities, Inc. and charged a $2.00 maximum premium processing charge.

---

[1] Plaintiff's policy – like all other The Hartford life insurance policies – remains with The Hartford, although there is an agreement between The Hartford and Prudential for Prudential to handle claims and administration of those policies.

23. Plaintiff's policy, and similar VUL policies issued by The Hartford, provide that one of the "Guaranteed Maximum Policy Charges" is a "Premium Processing Charge" explicitly capped at "1.25% Of All Premiums Paid." Thus, for a $4,000 premium, such as that paid annually by the Plaintiff for his policy, the Premium Processing Charge is contractually capped at $50 ($4,000 X 1.25% = $50).

24. Notwithstanding this clear cap, since at least March 2011, Plaintiff's annual Confirmation Statements from The Hartford (verifying receipt of $4,000 premium payments) clearly indicate that he has been charged a Premium Processing Charge of $100. *See* copies of March 2011 and March 2016 Confirmation Statements, attached as **Collective Exhibit 2**.

25. Plaintiff contacted The Hartford's Customer Service department about the Premium Processing Charge and was advised that the $100 charge was authorized in his VUL policy and that the Premium Processing Charge was a flat $100, regardless of the premium amount.

26. Notwithstanding the clear and unambiguous terms of the VUL policy, Plaintiff and other Class members have been charged an annual Premium Processing Charge of $100 since at least March 2011.

27. The earliest Confirmation Statement the Plaintiff has in his possession that expressly discloses a Premium Processing Charge is from March 2009. None of the Confirmation Statements in his possession for the years prior

-8-

to 2009 specifically disclose or itemize a Premium Processing Charge. Upon information and belief, however, The Hartford annually collected $100 from the Plaintiff for the PPC since the policy's issuance.

## VI. CLASS ALLEGATIONS

28. ***Class Definitions.*** Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of:

> All persons in the United States who owned a Hartford Life and Annuity Insurance Company ("The Hartford") life insurance policy and were charged a Premium Processing Charge exceeding 1.25% of the premium paid from the period beginning March 2011 through the date of trial.
>
> Excluded from the Class are The Hartford, its parents, subsidiaries, affiliates, officers, and directors, any entity in which The Hartford has a controlling interest, all customers who make a timely election to be excluded, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

29. Plaintiff reserves the right to modify or amend the definition of the proposed Class, or add other proposed Classes, before the Court determines whether certification is appropriate and as the Court may otherwise allow.

30. ***Class Period.*** The time period for the Class is March 2011 to the present or such time as The Hartford remedies the conduct complained of herein.

31. ***Numerosity.*** Plaintiff does not know the exact size of the Class, but based on the nature of the trade and commerce involved, he believes that the

Class numbers at least in the thousands and that Class members are geographically dispersed throughout the United States. The identity of those persons and entities is within the knowledge of The Hartford and can be ascertained by resort to The Hartford's records. The proposed Class meets all requirements for class certification. Joinder of the members of the Class would be impracticable.

32. ***Commonality.*** There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

33. Common questions of law and fact exist as to all members of the Class. Such questions of law and fact common to the Classes include, but are not limited to:

   (a) Whether The Hartford collected premium processing charges exceeding the contractually agreed-upon rate;

   (b) Whether Premium Processing Charges were unauthorized;

   (c) Whether The Hartford breached its contractual provision in assessing improper Premium Processing Charges;

   (d) The equitable or injunctive relief to which the Class may be entitled; and

   (e) The appropriate class-wide measure of damages.

34. ***Typicality.*** The claims of the representative Plaintiff are typical of the claims of the Class. Plaintiff, like all other Class members, was victimized by The Hartford's improper practices and The Hartford's wrongful conduct. Plaintiff's claims, like those of other Class members, arise out of the same wrongful policies and practices. Moreover, Plaintiff, like all Class members, has incurred monetary damages as a result of The Hartford's misconduct. Further, he is subject to the contracts as are all members of the proposed Class. Furthermore, the factual basis of The Hartford's misconduct – collecting and retaining premium processing charges exceeding contractually agreed-upon rates – is common to all members of the Class, and represents a common core of conduct resulting in injury to all members.

35. Plaintiff and Class members were similarly over-billed and overcharged VUL insurance premium processing charges by The Hartford. Accordingly, by proving his own claims, Plaintiff will presumptively prove other Class members' claims as well.

36. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

37. ***Adequacy of Representation.*** Plaintiff can and will fairly and adequately represent and protect the Class members' interests and have no interests that conflict with or are antagonistic to Class members' interests. Plaintiff's attorneys are experienced and competent in class action litigation.

38. ***Predominance.*** The questions of law and fact common to the members of the Class, as identified above, predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

39. ***Superiority.*** Adjudicating the claims of the Class members as a class action is superior to the alternative, because it allows for the fair and efficient adjudication of the controversy alleged in Complaint, while avoiding the risk that the prosecution of separate actions by individual members of the Class would create inconsistent or varying adjudications, establishing incompatible standards of conduct for The Hartford.

40. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of The Hartford, most Class members could not afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will be unable to obtain redress for their losses and The Hartford's misconduct will have occurred without remedy.

41.     Enormous economies to the court and parties exist in litigating the common issues on a class-wide basis.

42.     ***Manageability.***  Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members.

43.     The aggregate volume of claims – coupled with the economies of scale inherent in litigating similar claims on a common basis – will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the Class.

44.     Even if Class members themselves could afford such individual litigation, the court system could not.  Individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

45.     This action presents no difficulties in management that would preclude its maintenance as a class action.

-13-

46. ***Declaratory and Injunctive Relief.*** The Hartford has refused to correct its conduct and such inaction is generally applicable to the Class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Specifically, The Hartford continues to knowingly over-charge Plaintiff and other Class members. Under Federal Rule of Civil Procedure 23(b)(2), The Hartford has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final declaratory relief, as described below, with respect to the Class as a whole. Class-wide declaratory relief is appropriate to put an end to these illicit practices.

## VII. CLAIMS FOR RELIEF

## COUNT ONE

## DECLARATORY RELIEF

**(On behalf of the Nationwide Class)**

47. Plaintiff re-alleges and incorporates each allegation set forth in the preceding paragraphs of this complaint.

48. Plaintiff brings this Count on behalf of the Nationwide Class.

49. Class-wide declaratory relief is appropriate where a defendant has acted or refused to act on grounds that apply generally to the class.

50. The Hartford has either unilaterally increased previously contractually agreed-upon charges or engaged in an unlawful pattern to overcharge Plaintiff and

-14-

other Class members notwithstanding a clear and unambiguous agreement to charge a definite and specific sum for VUL insurance premium processing services.

51. Thus, a judicial declaration is necessary and appropriate so the parties may ascertain their rights, duties, and obligations with respect to the policy provisions.

52. The Court should use its equitable powers to declare the excessive premium processing charges unwarranted.

## COUNT TWO

## BREACH OF CONTRACT

**(On behalf of the Nationwide Class Based on Connecticut Law)**

53. Plaintiff re-alleges and incorporates each allegation set forth in the preceding paragraphs of this complaint.

54. Plaintiff brings this Count on behalf of the Nationwide Class.

55. Plaintiff negotiated and entered into a written contract with The Hartford for a variable last survivor life insurance policy.

56. The Hartford breached its contracts with Plaintiff and other Class members by, among other acts or omissions, over-charging Plaintiff and Class members for "premium processing" services.

57. The Hartford violated the contract by assessing improper charges not provided for in the contract, *i.e.*, the improperly inflated Premium Processing Charges, without legal basis. Thus, The Hartford has breached the express terms of its own contract.

58. Plaintiff and other Class members have performed all, or substantially all, of the obligations imposed under the contract, or those obligations have been waived.

59. As a direct result of the contractual breaches of Hartford, Plaintiff and Class members have suffered damages, and seek compensatory damages in a monetary amount to be determined at trial.

60. The Hartford is liable to Plaintiff and Class members for their damages resulting from its breaches of contract.

## COUNT THREE

### CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA"), CONN. GEN. STAT. § 42- 110A, ET SEQ.

**(On behalf of the Nationwide Class)**

61. Plaintiff re-alleges and incorporates each allegation set forth in the preceding paragraphs of this complaint.

62. Plaintiff brings this Count on behalf of the Nationwide Class.

63. Plaintiff, other members of the Class, and The Hartford are persons within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) who are entitled to bring an action under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42- 110a, et seq.

64. At all relevant times, The Hartford was engaged in trade or commerce within the meaning of Conn. Gen. Stats. § 42-110a(4).

65. The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. ANN. § 42-110b(a). The CUTPA further provides a private right of action under CONN. GEN. STAT. ANN. § 42-110g(a).

66. As a result of its violations of the CUTPA detailed above, The Hartford caused actual damage to Plaintiff and Class members and, if not stopped, will continue to harm Plaintiff and Class members.

67. Plaintiff also seeks court costs and attorneys' fees as a result of The Hartford's violation of the CUTPA as provided in CONN. GEN. STAT. ANN. § 42-110g(d). A copy of this Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with CONN. GEN. STAT. ANN. § 42-110g(c).

68. The Hartford employed unfair and deceptive acts and practices in connection with the collection of premium processing charges. Specifically, The

-17-

Hartford overcharged Plaintiff and Class members by collecting $100 for annual Premium Processing Charges when it had contractually agreed to collect a Premium Processing Charge of just 1.25% of the premium. The Hartford then concealed and failed to disclose the manner in which it deliberately overcharged the Plaintiff and other Class members.

69. The Hartford's conduct, as alleged herein, was unethical, illegal, and unscrupulous, and violated the public policy of the State of Connecticut.

70. The Hartford's conduct, as aforesaid, constituted unfair or deceptive practices in the conduct of a trade or business, in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stats. § 42-110a, et seq.

71. The Hartford's conduct, as aforesaid, has been perpetrated as a continuing wrongful scheme and wrongful course of conduct since at least March 2011.

## COUNT FOUR

## INJUNCTIVE RELIEF

### (On behalf of the Nationwide Class)

72. Plaintiff re-alleges and incorporates each allegation set forth in the preceding paragraphs of this complaint.

73. Plaintiff brings this Count on behalf of the Nationwide Class.

74. The Hartford's actions, as described, continue to cause irreparable harm and injury to the Plaintiff and other Class members.

75. In addition to damages, Plaintiff seeks injunctive relief to enjoin Hartford from continuing its unfair and deceptive acts, *i.e.*, the improper and unlawful charging of excessive Premium Processing Charges.

## VIII. PRAYER FOR RELIEF

Plaintiff seeks the following:

A. That summons be issued and The Hartford be required to answer according to law;

B. That the Court certify the Class proposed herein, appoint the named Plaintiff as the Class Representative for the proposed Class, and appoint the undersigned counsel as Class Counsel;

C. That Plaintiff and the Class be awarded a declaratory judgment declaring that The Hartford's conduct alleged herein violated the aforementioned common and statutory laws;

D. That the Court award injunctive relief in the form of an order prohibiting The Hartford from collecting excessive Premium Processing charges from Plaintiff and Class members, *i.e.*, Premium Processing Charges exceeding the contractually agreed-upon rate;

E. That Plaintiff and the Class be awarded a judgment for all available common law and statutory damages and equitable relief, including compensatory damages, against The Hartford in an amount to be determined at trial;

F. That the Court enter judgment requiring The Hartford to pay both pre- and post-judgment interest on any amounts awarded;

G. That Plaintiff be awarded his costs and attorneys' fees in this matter;

H. That Plaintiff be awarded such other further relief as is just and proper; and

I. That a jury of twelve be selected for all issues triable by a jury.

Respectfully submitted, this 13th day of March, 2017.

*/s/ Christopher T. Cain*
Christopher T. Cain
SCOTT & CAIN
Bank of America Center, Ste. 601
550 W. Main St.
Knoxville, Tennessee 37902
Tel: 865-525-2150
Email: cain@scottandcain.com